UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Henzo Requelme De Pina Tavares

     v.

US Immigration and Customs
Enforcement and Removal Operations,
Field Office Director et al

Civil No. 26-cv-00222-LM-AJ
Opinion No. 2026 DNH 058 P

## **O R D E R**

Henzo Requelme De Pina Tavares petitions for a writ of habeas corpus under

28 U.S.C. § 2241, alleging that his present civil immigration detention violates the

Immigration and Nationality Act (INA) and his rights to due process under the

Fifth Amendment. Specifically, Tavares alleges that his seven-month detention has

become unreasonably prolonged and that respondents have unlawfully failed to

facilitate his efforts to apply for adjustment of status. Respondents object. Doc. no.

9. For the following reasons, Tavares's amended petition (doc. no. 8) is denied

without prejudice.


### **STANDARD OF REVIEW**

This court may grant a writ of habeas corpus to a person held "in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2241(c)(3). The petition "may be resolved on the merits without [an evidentiary]

hearing when, as here, the material facts are not in dispute." Cummings v. Fed.

Corr. Inst., Berlin, Civ. No. 22-cv-468-SM-AJ, 2024 WL 1256068, at *1 (D.N.H. Mar.

25, 2024). The petitioner has the burden of proving that his confinement is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

## BACKGROUND[1]

Tavares is a twenty-three-year-old citizen of Cape Verde. He has resided in the United States since entering on a B-2 visitor visa in 2018.[2] Although Tavares was supposed to leave the United States on or before January 22, 2019, he remained in the country. In the approximately eight years that Tavares has been in the United States, he has graduated from high school in Boston, Massachusetts, and married a United States citizen who is pregnant with Tavares's child.[3]

On or about July 23, 2021, Tavares was charged in Boston Municipal Court with four counts of Indecent Assault and Battery on a Child Under 14. In October 2025, following a court appearance (presumably related to those charges), agents from U.S. Immigration and Customs Enforcement (ICE) detained Tavares and

---

[1] The following facts are drawn from the parties' filings and the attachments to respondents' motion to dismiss. They are not in dispute. In Tavares's response to respondents' motion to dismiss, he argues that the motion should be denied because he has at least articulated a "plausible" claim for relief. However, he fails to point to any factual disputes or additional facts he wishes to uncover through discovery. Accordingly, the court resolves the legal issues in this petition on the merits based on the undisputed factual record.

[2] "A B-2 visa is issued to a 'visitor for pleasure' and permits the visitor to 'be admitted for not more than one year,' though the visitor 'may be granted extensions of temporary stay in increments of not more than six months each.'" Corado-Arriaza v. Lynch, 844 F.3d 74, 75 n.1 (1st Cir. 2016) (quoting 8 C.F.R. § 214.2(b)(1)).

[3] Tavares is also the father and caregiver of another United-States-citizen child.

placed him in removal proceedings under 8 U.S.C. § 1229a.[4] Tavares has been detained at the Strafford County Department of Corrections since that time.

On November 20, 2025, Tavares received a bond hearing before an Immigration Judge (IJ). The IJ denied bond on the basis that Tavares posed a "flight risk that would not be ameliorated by any conditions or bond amount." Doc. no. 9-2 at 2. The IJ reached this conclusion based in part on Tavares's then-pending criminal charges.[5] Tavares appealed the IJ's decision to the Board of Immigration Appeals (BIA), where it remains pending.

Shortly after his initial bond hearing, Tavares requested a subsequent bond hearing, which was denied by a different IJ on December 4, 2025. The IJ found that Tavares "failed to establish a change in circumstances or new evidence that would warrant disturbing the prior [IJ's] order." Doc. no. 9-4 at 2; see 8 C.F.R. § 1003.19(e) ("[a noncitizen's] request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the [noncitizen's] circumstances have changed materially since the prior bond redetermination"). On March 18, 2026, Tavares was found not guilty of all criminal charges.

---

[4] ICE issued Tavares a notice to appear which charged him with being subject to deportation on the ground that he remained in the country longer than permitted. See 8 U.S.C. § 1227(a)(1)(B).

[5] Tavares makes this allegation in his verified petition, and the court assumes it is true for the purposes of this order. The court notes, however, that the record before it contains nothing more than a form order memorializing the IJ's findings in a single sentence, substantially reproduced in the preceding sentence of this order. See doc. no. 9-2 at 2.

Meanwhile, at some point during his detention, Tavares applied to U.S. Citizenship and Immigration Services (USCIS) for adjustment of status.[6] USCIS scheduled an interview relative to his application which Tavares states he was unable to attend due to his detention.[7] At some point thereafter, an IJ denied Tavares's application for adjustment of status and ordered him removed from the United States.[8] Tavares has appealed the IJ's decision.

On March 25, 2026, Tavares filed his initial petition for a writ of habeas corpus, which he amended without objection on April 13. Three days after filing his amended petition, Tavares attended an interview with USCIS.

## DISCUSSION

Tavares argues that his detention violates both the INA and his rights to due process under the Fifth Amendment. Before turning to the merits of Tavares's claims, the court will provide a brief overview of the relevant statutory structure.

---

[6] "Adjustment of status is a process by which [noncitizens] physically present in the United States may obtain lawful permanent resident status without leaving the country to apply for a visa via consular processing. An individual can seek adjustment of status in a removal proceeding as a form of relief from removal. . . . The burden is on the applicant to establish both that he satisfies the applicable eligibility requirements and that he merits a favorable exercise of discretion." Thomas v. Garland, 25 F.4th 50, 51-52 (1st Cir. 2022) (brackets and quotations omitted).

[7] Respondents state that it is "unclear" why Tavares's initial interview did not take place as scheduled, but that immigration detention does not preclude noncitizens from attending interviews with USCIS. Doc. no. 9 at 4.

[8] It is unclear from the record when this occurred.

I.     Statutory Overview

A noncitizen who is "in the country" may be detained during the pendency of removal proceedings pursuant to 8 U.S.C. § 1226. Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). Unless ineligible for release under § 1226(c), DHS has the authority to release noncitizens facing removal proceedings on "bond of at least $1,500" or "conditional parole." 8 U.S.C. § 1226(a)(2); see id. § 1226(c) (requiring detention for noncitizens that have committed specified criminal offenses). Alternatively, DHS may elect to detain the noncitizen pending the outcome of removal proceedings. Id. § 1226(a).

"An [ICE] officer makes the initial detention determination for noncitizens subject to detention under section 1226(a)." Hernandez-Lara v. Lyons, 10 F.4th 19, 26 (1st Cir. 2021) (citing 8 C.F.R. § 236.1(c)(8)). Section 1226's implementing regulations provide that, if the noncitizen disagrees with the officer's detention decision, he may appeal that decision to an IJ, who may then "exercise the authority" in § 1226(a) to detain or release the noncitizen "and determine the amount of bond, if any, under which the [noncitizen] may be released." 8 C.F.R. § 236.1(d)(1). In Hernandez-Lara, the First Circuit held that, to detain a noncitizen under § 1226(a), "due process requires the government to either (1) prove by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove by a preponderance of the evidence that [the noncitizen] poses a flight risk." 10 F.4th at 41.

The applicable regulations provide that either party may appeal the IJ's bond redetermination to the BIA. 8 C.F.R. § 236.1(d)(3). Moreover, after an initial bond

redetermination, a noncitizen may request a subsequent redetermination before an IJ. Id. § 1003.19(e). Such a request "shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." Id. Some district courts have held that an IJ's failure to consider clear evidence of materially changed circumstances may violate a noncitizen's rights to due process, warranting habeas relief. See, e.g., Gimenez v. Hernandez, No. 2:26-cv-00966-GJL, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026) ("Where the only identified factor supporting bond denial—namely, a pending criminal charge—was dismissed, the factual landscape before the IJ changed in a manner directly relevant to their prior bond determination. The IJ's failure to acknowledge or engage with evidence of that change, coupled with the absence of any articulated reasoning, constitutes an abuse of discretion."); Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 774 (N.D. Cal. 2019) ("[T]he Court finds that when all of Petitioner's evidence is considered, Petitioner has demonstrated, as a matter of law, that his circumstances materially changed since his initial bond hearing.").

The court will now address Tavares's claim that his detention violates his rights to due process under the Fifth Amendment. It will then address Tavares's argument that his detention is unlawful under various provisions of the INA.

II.    Tavares Has Not Shown that His Detention Violates Due Process

In Count I, Tavares argues that his present detention violates his rights to due process because his acquittal on charges that were pending at his initial bond

hearing, and which he asserts were relied upon by the IJ in denying bond, is a material change in circumstances warranting his release, or at least a second bond hearing. However, Tavares does not allege that he has requested or been denied a bond hearing since the time of his acquittal.

"[A] plaintiff's failure to exhaust [his] administrative remedies precludes [him] from obtaining federal review of claims that would have properly been raised before the agency in the first instance." Brito v. Garland, 22 F.4th 240, 255 (1st Cir. 2021). "Exhaustion allows 'an agency the first opportunity to apply its expertise' and 'obviates the need for judicial review in cases in which the agency provides appropriate redress.'" Id. at 256 (quoting Anversa v. Partners Healthcare Sys., Inc., 835 F.3d 167, 174-75 (1st Cir. 2016)). Exhaustion may be required by statute or as a matter of common law. Id. at 255. Here, respondents do not point the court to any statute requiring exhaustion; thus, the court applies the principles of common-law exhaustion.

As noted, regulations allow Tavares a method of requesting a subsequent bond hearing based on a material change in circumstances. See 8 C.F.R. § 1003.19(e). While the record shows that Tavares requested a new bond hearing in December 2025, Tavares does not allege that he did so after his March 2026 acquittal: the very event he describes as leading to a material change in circumstances. Moreover, while a habeas court may excuse a failure to exhaust where the relevant agency has indicated predetermination of the issue, Williams v. Warden, FCI Berlin, 793 F. Supp. 3 412, 422 (D.N.H. 2025), Tavares presents no

evidence that a request for a new bond hearing would be futile or that DHS's response to such a request is preordained. Thus, Tavares cannot prevail on this undeveloped claim.

Next, Tavares argues that his detention of approximately seven months has become unreasonably prolonged in violation of his due process rights. However, even assuming that Tavares's detention has become unreasonably prolonged, "[t]he remedy for a prolonged detention is a bond hearing before an immigration judge at which the government bears the burden of proving that the [noncitizen] should not be released on bond." Fils-Aime v. FCI Berlin, Warden, 808 F. Supp. 3d 218, 226 (D.N.H. 2025) (brackets omitted) (quoting Smorodska v. Strafford Cnty. Dep't of Corr., Civ. No. 20-cv-446-JL, doc. no. 31 at 5 (D.N.H. May 14, 2020)). Tavares has already received such a hearing, and he does not allege that the IJ failed to apply the standard of review mandated by Hernandez-Lara.

Moreover, to the extent that Tavares argues that he is entitled to outright release based on the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678, 701 (2001), this claim fails, too. Although detention under § 1226 may become protracted, it does not present the same scenario of potentially indefinite detention animating the constitutional concerns in that case. See G.P. v. Garland, 103 F.4th 898, 901-02 (1st Cir. 2024) (holding that immigration detainees not entitled to immediate release under Zadvydas despite lengthy detention when not caught in a "removable-but-unremovable limbo").

Finally, Tavares argues that respondents have violated his due process rights by depriving him of a meaningful opportunity to pursue adjustment of status by detaining him and by "failing to facilitate his participation in required immigration processes, . . . effectively foreclos[ing] his access to the immigration system." Doc. no. 8 at 7. However, "[f]or due process protections to attach, there must be a cognizable property or liberty interest at stake." Naeem v. Gonzales, 469 F.3d 33, 38 (1st Cir. 2006) (citing Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976)). The First Circuit has repeatedly recognized that, because adjustment of status is discretionary and not an entitlement or a right, a noncitizen "has no protected property or liberty interest in . . . adjustment of status." Id.; accord Thomas v. Garland, 25 F.4th 50, 54 (1st Cir. 2022) (holding that noncitizen's due process claim could not succeed because he "fail[ed] to explain how he had a protected liberty interest in the discretionary form of relief from removal that he voluntarily sought - - adjustment of status."). Accordingly, Tavares's due process claim based on his attempts to obtain adjustment of status also fail.[9]

III.     Tavares's Statutory Claims Lack Merit

Tavares also argues that his detention violates his rights under 8 U.S.C. §§ 1231 and 1255. Section 1231 gives "ICE [] the authority to detain and remove

_____

[9] Tavares also argues that his detention violates due process because he is attempting to pursue relief as a member of the settlement class in Calderon Jimenez v. Mayorkas, No. 18-cv-10225-MLW, 2025 WL 220511, at *1 (D. Mass. Jan. 16, 2025). Even putting aside the fact that Tavares does not demonstrate how his detention has prevented him from pursuing relief under that settlement, the Calderon Jimenez settlement class includes only those with final orders of removal—something Tavares acknowledges he does not have. See id.; doc. no. 8 at 5.

9

noncitizens with <u>final orders</u> of removal." Gomes-Afonseca v. Lyons, No. 26-cv-10215-AK, 2026 WL 538167, at *2 (D. Mass. Feb. 26, 2026) (emphasis added). Tavares acknowledges that he is not subject to a final order of removal and explicitly concedes that "his detention is governed by 8 U.S.C. § 1226." Doc. no. 8 at 5. Although an IJ has ordered Tavares removed, that order will not become "final" for purposes of § 1231 unless or until the BIA dismisses the appeal. 8 U.S.C. § 1231(a)(1)(B)(i); 8 C.F.R. § 1241.1(a). Accordingly, Tavares's conclusory claim that his detention violates § 1231 is wholly without merit.

Turning to 8 U.S.C. § 1255, that statute allows certain noncitizens to apply for adjustment of status. 8 C.F.R. § 245.2 lays out detailed procedures by which they must do so. Section 245.6 states that "[e]ach applicant for adjustment of status under this part shall be interviewed by an immigration officer[,]" however, the interview "may be waived . . . when it is determined by the Service that an interview is unnecessary."

Tavares argues that his detention, which caused him to miss his initial interview appointment with USCIS, violates these provisions and "is inconsistent with the statutory framework." Doc. no. 8 at 8. However, the fact that Tavares may have missed a meeting with USCIS (which was ultimately rescheduled and which he attended) because he was detained is not a basis for this court to order his release now. This is particularly true where the very regulations upon which Tavares relies indicate that USCIS has discretion to waive the interview if deemed unnecessary. Finally, to the extent that Tavares asks this court to order

respondents to facilitate his appearance at a future USCIS interview, that claim is moot: respondents already allowed Tavares to attend an interview with USCIS on April 16.[10]

**CONCLUSION**

For all these reasons, Tavares's amended petition for a writ of habeas corpus (doc. no. 8) is denied without prejudice. The clerk is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 18, 2026

cc:     Counsel of Record

---

[10] Tavares also argues that he is entitled to release under the INA because he has "sought relief" under the Calderon Jimenez settlement. Doc. no. 8 at 8. That argument is unavailing both because Tavares admits that he does not meet the criteria for membership in the Calderon Jimenez settlement class and he cites no legal authority as support.